CONSOLIDATED PUBLIC UTILITIES COMPANY OF WESTMINSTER *v.* CHESTER A. BAILE.

*Statute of Limitations—Seepage of Water—Concealment of Cause of Action—Fraud.*

In an action on account of the seepage of water from defendant's main into a building, in which a plea of limitations was filed, a replication which averred that defendant fraudulently kept plaintiff in ignorance of the cause of action "by denying and failing to ascertain" that the water came from its main, was demurrable, the word "fraudulently" not being sufficient to

show that defendant's denial was false, or that its failure to ascertain the source of the water was deceptive.     pp. 374-376

Under Code, art. 57, sec. 1, the right of action in favor of the lessee of a building on account of seepage of water into the building accrues at the inception of his injury, and is enforceable until the expiration of three years after the cessation of his injury.                                            p. 376

In such case the recovery is limited to the damages sustained within three years prior to the suit, unless plaintiff can show that his delay, for a longer period, in bringing the suit, was due to his having been kept in ignorance of his cause of action by fraud of defendant, which could not have been discovered by ordinary diligence.                              p. 376

In an action by the lessee of a building on account of seepage of water into the building, a prayer, permitting recovery for the whole period of the injury, from 1917 to 1922, notwithstanding a plea of limitations, provided plaintiff "was kept in ignorance of said cause of action until May 2, 1924," and used ordinary diligence with a view to its discovery, was defective, it making no reference to fraud in keeping plaintiff in ignorance of the cause of action, which is a statutory condition of the suspension of limitations.                                    p. 377

In an action on account of the seepage of water into a building leased to plaintiff, the refusal to direct a verdict for defendant was proper, that the water came from defendant's main being inferrible from evidence that, after a leak in the main was found and repaired, the seepage ceased, and it being also inferrible from the evidence that defendant was negligent in not adopting more effectual measures to ascertain whether its main was leaking, after plaintiff's repeated complaints.   p. 377

In an action on account of the seepage of water into a building leased to plaintiff, in which there was a plea of limitations, it was error to refuse a prayer that plaintiff could not recover damages not sustained within three years of suit, the evidence showing that defendant's statements to plaintiff that the water did not come from its main, while perhaps mistaken, were made in good faith, after investigation.         pp. 378, 379

*Decided February 16th, 1927.*

Appeal from the Circuit Court for Howard County
(FORSYTHE, J.).

Action by Chester A. Baile against the Consolidated Public Utilities Company of Westminster. From a judgment for plaintiff, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and SLOAN, JJ.

*James Clark,* with whom were *Bond & Boylan* on the brief, for the appellant.

*Joseph L. Donovan* and *D. Eugene Walsh,* for the appellee.

URNER, J., delivered the opinion of the Court.

As the lessee of the Albion Hotel property in Westminster, the plaintiff suffered losses in consequence of the seepage of water into the basement of the building. The damages thus sustained are sought to be recovered from the defendant corporation on the theory that the water causing the injury percolated through the foundation walls from a leak in one of the mains forming part of the public water supply system, which the defendant owns and operates. The plaintiff's term as tenant of the building ended on September 22nd, 1922, but this suit was not brought until August 19th, 1925. An important feature of the defense was the effort to prevent recovery of any damages incurred beyond the statutory limitation period of three years. But the suit was also resisted on the basis of a denial that the defendant's water main was the source of the seepage into the building which the plaintiff occupied.

The presence of water in the basement was first noticed by the plaintiff in 1917. From that time, until his tenancy ended, water continued to enter the basement in sufficient quantities to interfere with the use of the bowling alleys there located, and finally to cause their abandonment and ruin. Complaints were made by the plaintiff and his lessor to the superintendent of the defendant company, on the

supposition that the water was escaping from the defendant's main in the street on which the leased building fronted. But as the result of investigations, chiefly made by driving a steel rod into the ground at various points along the course of the main, the superintendent concluded that it was not leaking, and so informed the plaintiff and his landlord. The complaints and tests were repeated at intervals, but the source of the water was not discovered, or its flow abated, until 1924, when, upon an urgent demand by the owner of the building, the defendant made excavations along the line of the main in the adjacent street, and found a leak, which was promptly repaired. Since that time, according to the testimony, the basement has been free of water. The evidence to that effect doubtless influenced the jury to render a verdict for the plaintiff, notwithstanding the proof offered by the defendant suggesting other sources from which the water might have reached the building in the plaintiff's possession.

The first question to be considered, on this appeal from the judgment on the verdict, is raised by an overruled demurrer to the plaintiff's replication to the defendant's plea of limitations. The plea stated that "the alleged cause of action did not accrue within three years before the bringing of this suit," and the replication averred that "the said cause of action did accrue within three years prior to the filing of the said suit, inasmuch as the said defendant did fraudulently keep the plaintiff in ignorance of the said cause of action by denying and failing to ascertain that it was water from its main or mains seeping into said basement, although the said plaintiff did charge and notify the said defendant that he believed that said water was coming from its main or mains on or about the year 1917; and the fact that it was actually the water of said defendant seeping into said basement did not come to the knowledge of the plaintiff until May 1st, 1924, although the plaintiff had used ordinary diligence to discover the same."

By section 14 of article 57 of the Code it is provided:

"In all actions where a party has a cause of action of which
he has been kept in ignorance by the fraud of the adverse
party, the right to bring suit shall be deemed to have first
accrued at the time at which such fraud shall or with usual
or ordinary diligence might have been known or discovered."

In support of the demurrer, it is contended that the repli-
cation does not meet the requirements of the Code provision
for the suspension of the bar of limitations, because there is
no sufficient allegation of any fraud of the defendant by
which the plaintiff was kept in ignorance of his cause of
action. The averment is that the defendant fraudulently
kept the plaintiff in ignorance of the cause of action "by
denying and failing to ascertain" that the water complained
of came from its main. But the conduct thus specified may
not have involved any element of fraud. It is not alleged
that there was any bad faith in the defendant's denial and
failure to ascertain that there was a leak in its main near
the building into which the water percolated. In the case
of *Cumberland Glass Co. v. De Witt,* 120 Md. 381, to which
the appellee referred, the replication to the plea of limita-
tions alleged that the defendant company fraudulently kept
the plaintiff in ignorance of the cause of action "by fraudu-
lently, deceitfully and dishonestly denying that it had in any
way been guilty of any of the acts" charged in the declara-
tion. The denial in this case is not so described. Because
of the defendant's denial, and failure to discover, that a
leak in its main existed, the plaintiff's suspicion as to such a
leak appears from the replication to have remained for a long
time unverified. But unless the denial was false, or the
failure to discover was deceptive, the plaintiff was not there-
by fraudulently kept in ignorance of his right to bring this
suit. In alleging that the defendant failed to ascertain the
existence of a leak in its main, the replication excludes the
theory that the denial was made with knowledge that it was
false, and there is no averment that the failure to make the
discovery was in consequence of any desire or purpose to
suppress the truth. The charge that the defendant "fraudu-
lently" kept the plaintiff in ignorance of his cause of action

is not sufficient to give a sinister character to the normally innocent conduct by which that result is alleged to have been accomplished. *Lansford v. Moore,* 145 Md. 420; *Hughes v. McDougall,* 142 Md. 1; *Kinsey v. Drury,* 141 Md. 684.

The plaintiff's right of action accrued at the inception of his injury from the flow of water into the basement of the building in his occupancy, and he could enforce that right until the expiration of three years after he ceased to be thus injuriously affected. Code, art. 57, sec. 1. But his recovery is limited to the damages sustained within three years prior to the suit, unless he can show that his delay, for a longer period, in bringing the suit, was due to his having been kept in ignorance of his cause of action by fraud of the defendant, which could not have been discovered by ordinary diligence. In this case the plaintiff alleged in his declaration that in the fall of 1917 water from a leak in the defendant's main began to seep into the basement of the building tenanted by the plaintiff, and that this cause of injury continued until the termination of his tenancy in September, 1922, and that the defendant negligently failed to repair the main, although repeatedly notified by the plaintiff of the injurious conditions. It was not of the fact and cause of his injury, but of the defendant's responsibility for it, that the plaintiff remained in ignorance, according to his replication, until a time within the period of the statute of limitations. The ignorance thus alleged would not toll the statute, unless it was caused by a fraud which the defendant practiced. As the replication fails to describe and charge such a fraud, we must hold that the demurrer should have been sustained.

The cases cited in support of the replication involved knowledge by the defendant of the facts alleged to have been fraudulently concealed. *Schuck v. Bramble,* 122 Md. 411; *Cumberland Glass Co. v. De Witt,* 120 Md. 381; *New England Ins. Co. v. Swain,* 100 Md. 558; *Wear v. Skinner,* 46 Md. 257; *Trustees of Proprietors of Kingston v. Lehigh Valley Coal Co.,* 241 Pa. 469; *Lewey v. H. C. Frick Coal Co.,* 166 Pa. 536, 28 L. R. A. 283; *Lightner Mining Co. v. Lane,* 161 Cal. 689, Ann. Cas. 1913C, 1093. The

absence of such knowledge is definitely shown by the replication filed in the case now under review.

The plaintiff's first prayer, which was granted with a minor modification, permitted a recovery of damages for the whole period of the injury, notwithstanding the plea of limitations, provided he "was kept in ignorance of said cause of action until May 2, 1924," and used ordinary diligence with a view to its discovery. This instruction made no reference to fraud as a means of keeping the plaintiff in ignorance of the cause of action which he is now asserting. Because of the disregard of this statutory condition of the suspension of limitations, the prayer was defective.

One of the defendant's prayers sought to have the case withdrawn from the jury on the theory that the plaintiff's cause of action accrued more than three years before the suit was brought, and that there was no evidence legally sufficient to remove the bar of the statute of limitations which the defendant had pleaded. As already noted, a part of the period, during which the plaintiff's interests were affected by the water percolation proved in the case, was within three years before the action was instituted, and an inference that the water came from the defendant's main could be drawn from the evidence that when the main was repaired, after a leak was found, the seepage of water into the building occupied by the plaintiff promptly ceased. Since the evidence, therefore, was legally sufficient to support recovery as to a part of the plaintiff's claim, the trial court was right in refusing to withdraw the case from the jury. It could be inferred from the evidence that the defendant was negligent in not adopting more effective measures to ascertain whether its main was leaking, in view of the plaintiff's repeated complaints of injury by water which he attributed to such an origin. For that reason the prayers which proposed a directed verdict in favor of the defendant, for want of evidence that the plaintiff's loss resulted from negligence of the defendant, were rightfully rejected.

The fifteenth prayer of the defendant was correct in

theory and should have been granted. It sought to have the jury instructed that there was no legally sufficient evidence in the case to prove that the defendant fraudulently kept the plaintiff in ignorance of his alleged cause of action, and there could be no verdict awarding him any damages not sustained within three years before this suit. There is no evidence in the record from which any fraud of the officers or agents of the defendant corporation can be inferred. It appears to have been the honest belief of the defendant's superintendent, based upon his investigations, that the water by which the plaintiff was affected injuriously did not escape from the defendant's main, but came from other sources which he designated. It is admitted that he made efforts to find the source of the trouble after receiving complaints from the plaintiff and his lessor. There is no contradiction of the superintendent's testimony that, because of such complaints, he twice had excavations made along the course of the main near the building affected, and on other occasions had the ground under the macadam surface of the street tested for moisture by the use of a steel rod. Both the plaintiff and the owners of the building testified that the defendant would not give them permission to dig up the street in order to make an investigation of their own, the representatives of the defendant insisting that it was surface water which caused the basement to be wet. It does not appear to have been necessary for the plaintiff or his lessor to obtain the defendant's permission to have an opening made in the bed of the public street under which the water main was laid. The peremptory demand finally made for the further investigation by the defendant, which resulted in the discovery of a leak in the main, could have been made previously. The fact that the result of the defendant's earlier investigations, and the expressions of its conclusions, were not actively disputed, but that the troublesome conditions were endured for so long a period, is an indication that the defendant's view as to the source of the water in the basement was not regarded as altogether unrea-

sonable. Evidence was adduced on behalf of the defendant tending with some force to support its theory. While the jury might find that the defendant's officers were mistaken in their belief, there is no evidence justifying a decision that they acted in bad faith. In order to overcome the plea of limitations, the testimony must show that the plaintiff was kept in ignorance of his cause of action by fraud, and not merely by his submission to the adverse party's honest mistake of judgment. There is no evidence in the record having a legal tendency to prove that any such fraud was committed.

The eighteenth prayer of the defendant was the same in general effect as its fifteenth prayer, and was also refused. Except for the fact that it was virtually a repetition of the other prayer, it could properly have been granted.

By special exception to the plaintiff's second prayer, relating to the measure of damages, and by a prayer directed to the same subject, the defendant asserted that there was no legally sufficient evidence to support a recovery founded on the rental value of the basement to which the claim of damages referred. There is evidence from which, we think, the rental value of the basement could be fairly determined, and we find no error in the refusal of the prayer, and the overruling of the special exception, by which this point was raised.

There were several exceptions to rulings on the admissibility of evidence, but they are not emphasized in the appellant's brief, and it is sufficient to say that they show no error.

As we are unable to approve of the rulings on the replication to the plea of limitations, and on the plaintiff's first, and the defendant's fifteenth, prayers, we must reverse the judgment and remand the case for a new trial.

> *Judgment reversed, with costs in this court, and new trial awarded, the costs below to abide the result.*