MARTIN J. CALLAHAN *v.* LENNOX B. CLEMENS, ET AL.

[No. 28, January Term, 1945.]

*Decided March 2, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Paul F. Due* with whom were *Due, Nickerson & Whiteford* on the brief, for the appellant.

*Joseph J. Rehm* for appellees, Lennox B. Clemens, individually as trustee.

*Wirt A. Duvall, Jr.,* for Joseph Myerhoff, et al., appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court of Baltimore City, sustaining demurrers of all the defendants to the complainant's second amended bill of complaint, without further leave to amend, and dismissing the bill.

The allegations of the second amended bill are substantially as follows:

Martin J. Callahan acquired the property, 6013 Clear Spring Road, in Baltimore City, in fee simple, on September 30, 1938, by deed from the Home Owners Loan Corporation, which in turn had acquired the property, in some manner not disclosed by the Record, from W. Scott Jones and wife. The lot has a frontage to the west of 54 feet on Clear Spring Road, and a depth along the northern boundary of 220 feet. The front of the lot is occupied by a dwelling house, and the ground slopes to the south east. There is a stone retaining wall along the northern boundary, running from the rear of the house a distance of some 70 feet, which is 1½ feet wide, and from 5 to 15 feet in height. This wall began to crumble and fall upon the complainant's property in 1939, and to spill earth thereon. The allegation is that this was due to negligent construction and design, and that the builders concentrated the surface water into pipes through the wall, which discharge water on complainant's land.

The bill further alleges that the wall was erected under the following circumstances:

On November 9, 1929, the appellant's predecessors in title, W. Scott Jones and wife, conveyed a lot 25 feet in width immediately adjoining the appellant's property to the north, to Augustus D. Clemens. The grantors "reserved in themselves, their heirs and assigns, the use of a 12-foot alley to be laid out by the said Clemens along the southernmost line of said 25-foot lot." Augustus D. Clemens and Lennox B. Clemens, his brother, assembled several other properties to the north, and on November 30, 1929, by deed recorded immediately following the deed from Jones and wife, conveyed to the Parkway

Development Company all the property fronting on Northern Parkway and "extending southerly to the north side of the 12½-foot alley there laid out." A row of two-story brick houses fronting on Northern Parkway, with access to the 12½-foot alley in the rear, was subsequently erected on this tract by the corporation. The bill alleges that as part of the consideration for the purchase, the grantors agreed that the Parkway Development Company should be permitted to erect a retaining wall on the south side of the 12½-foot alley, adjacent to complainant's property, in order to make the tract level by means of a fill. The ground to the north is somewhat higher than the complainant's lot, due to the slope of the land.

Augustus D. Clemens died some time after the foregoing conveyance, and his will was probated on January 31, 1931. Under his will, he devised and bequeathed all of his real and personal property to Lennox B. Clemens, trustee for his children and others, and it is alleged that title to the 12½-foot strip, subject to the easement of an alley in Jones and his assigns, passed to Lennox B. Clemens, trustee.

It is alleged that the wall in question was erected or caused to be erected by Joseph Meyerhoff, Isidore Goldberg and Jacob Meyerhoff, and by the Parkway Development Company shortly after the conveyance to it in 1929. It was not placed exactly on the dividing line, but encroached on complainant's property from .02 of a foot to .6 of a foot at the rear. The 12½-foot alley was paved with concrete, but did not follow the property line. Taking a swing to the north, it left a space of earth, up to 12½ feet in width adjoining the retaining wall.

The Parkway Development Company was dissolved by the State Tax Commission for nonpayment of taxes, on February 23, 1939. The defendants Joseph Meyerhoff, Isidore Goldberg and Jacob Meyerhoff were directors of the corporation at the time of its dissolution, and they are joined as directors on the theory that they are trustees and jointly liable to any creditor, having a claim

against the corporation, to the extent of its assets in their hands. It is not alleged that there are any such assets.

None of the conveyances make any reference to the retaining wall; it is alleged that neither the complainant nor his predecessors in title gave permission to anyone as to the erection of the wall. The bill alleges that its erection was not beneficial to the complainant, but was erected for the sole benefit of the Development Company. It also alleges continuous efforts by the complainant to compel the defendants to correct the situation from 1939, when the wall began to crumble, until the bill was filed in June, 1944.

The prayers of the bill are (1) that the defendants be required to abate the nuisance by erecting a wall of sufficient size and strength to retain the land; (2) that the defendants be required to remove from the complainant's property that part of the wall originally erected thereon as well as that part which has since collapsed and fallen on his property; (3) that the defendants be enjoined from concentrating and casting water on his property; and (4) other and further relief.

Separate demurrers were filed by the Meyerhoffs and Goldberg, individually and as directors of the Parkway Development Company, and by Lennox B. Clemens, trustee, and Lennox B. Clemens, individually, on numerous grounds, including limitations and laches.

The theory of the bill seems to be that the complainant is entitled to relief in equity against continuous trespasses, encroachments and nuisances created or continued by adjoining landowners and others acting with their consent or under their direction. The general principle of equity jurisdiction is well established. In *Levenson & Zenitz v. Bonaparte*, 131 Md. 635, 636, 102 A. 998, 999, this court said: "It is a familiar and well-established rule of law, both in this and other states, that while for a single act of trespass upon real property equity is without jurisdiction, where the effect of that trespass will result in causing irreparable mischief or

ruin, or reach to the very substance and value of the estate, operating to the destruction of it in the character in which it is enjoyed, equity will intervene. *White v. Flannigan,* 1 Md. 525, 54 Am. Dec. 668; *Baltimore Belt R. R. v. Lee,* 75 Md. 596, 23 A. 901; *Long v. Ragan,* 94 Md. 462, 51 A. 181." See also *Neubauer v. Overlea Realty Co.,* 142 Md. 87, 120 A. 69, and *Harms v. Kuchta,* 141 Md. 610, 119 A. 454.

In the case at bar, however, there are special difficulties in the application of the general principle.

We shall first consider the case made out by the bill against Lennox B. Clemens, individually. This defendant never had title to any part of the 25-foot lot adjoining the complainant's lot to the north. He joined in the deed to the Parkway Development Company, because of his joint interest in two of the five parcels making up the assembled tract. According to the bill, he agreed that this corporation should be permitted to erect a retaining wall along the southern boundary of the alley, but it is difficult to see upon what theory he could be held liable for the negligent design and construction of the wall by a third party, upon land in which he had no interest whatever. Compare *Caretti v. Building Co.,* 150 Md. 198, 208, 132 A. 619. We think the demurrer as to this defendant was properly sustained.

As to the claim against Clemens, trustee, it seems clear that neither this defendant, nor his brother in his lifetime, would have been liable for the negligent construction of the wall by a third party. Permission to erect the wall would not in itself constitute a tortious act. The complaint is not that the wall is a nuisance *per se,* but that it was negligently constructed, and encroached upon the complainant's lot. But neither of the Clemens brothers attempted to or could exercise any control over the manner in which the work was performed, and there was no relation of principal and agent.

Upon this point, the case of *Weilbacher v. J. W. Putts Co.,* 123 Md. 249, 91 A. 343, would seem to be controlling. In that case, the owner of a building was held not liable

for the fall of a scaffold in the control of an independent contractor, although its erection was permitted by the owner and the work was for the owner's benefit.

It is suggested that liability can be predicated upon failure of an owner to abate a nuisance, after due notice. But the claim of ownership in Clemens, trustee, is highly technical. Under the deed from Jones and wife, Augustus D. Clemens acquired title to a 25-foot lot, subject to a reserved right of way, which he was obligated to lay out along the boundary line. His subsequent deed to the Development Company fixed the southern boundary by reference to this right of way. It seems clear that under this deed title to the northern one-half of the alley passed to the Development Company. Section 114 of Art. 21 of the Code provides that any conveyance binding upon a highway carries to the grantee title to the center thereof, in the absence of an express provision to the contrary. This applies to a private as well as a public way. *Campeggi v. Wakefield,* 157 Md. 229, 145 A. 546; *Pope v. Clark,* 122 Md. 1, 9, 89 A. 387; *Maryland Tel. Co. v. Ruth,* 106 Md. 644, 68 A. 358. The statute merely extends a presumption that was recognized at common law. *Peabody Heights Co. v. Sadtler,* 63 Md. 533, 52 Am. Rep. 519; and see notes 47 A. L. R. 1276; 123 A. L. R. 542; and 8 Am. Jur., Sec. 36.

By a parity of reasoning, it might be contended that the deed from Jones to Clemens, reserving the right of way along the boundary, retained title to the southern one-half of the alley in Jones. Such a result would be consistent with the apparent purpose of the presumption and of the statute, although it may be doubted whether the terms of the statute are broad enough to cover the case.

The legal status· of the alley, so far as the beneficial use thereof is concerned, is somewhat obscure. It would appear that the alley, as laid out and paved, is used by the adjoining owners to the north. It is not suggested that the Development Company paved the alley for the sole benefit of the complainant's lot, and it is in fact

located in part on the right of way and in part upon land conveyed to the Development Company. Reference to the alley in the deed to the Development Company would seem to indicate an intention to convey the easement. See *Adams v. Peninsula Produce Exchange,* 138 Md. 656, 115 A. 106, and cases there cited.

The situation seems to be that Augustus D. Clemens, and his assignee Clemens, trustee, had, at most, only a nominal fee in the southern one-half of the alley, by a quirk of conveyancing. The whole beneficial use thereof is in the complainant alone, or in the complainant and the property owners to the north, who are not parties to this cause. We think that equity, looking to the substance rather than the form, should not predicate or enforce an obligation to maintain the alley, and the wall supporting it, upon ownership of a naked legal title. We think the demurrer as to Clemens, trustee, was properly sustained.

We come, then, to the case against the Meyerhoffs and Goldberg, individually. The allegation that they "erected or caused to be erected" the wall in question seems to fall short of alleging that they personally participated in the work. Other allegations make it clear that permission to erect the wall was granted to the Parkway Development Company alone, and that the wall was erected for the benefit of the tract owned and developed by that corporation. The Meyerhoffs and Goldberg were the directors of the corporation at the time of the dissolution, and presumably at the time when the wall was erected, but that fact alone would not make them personally responsible for a negligent act of the corporation or its agents or contractors. Moreover, the allegedly tortious act of negligently erecting the wall occurred in 1929, and its alleged defects became known to the complainant in 1939. A cause of action accrued at that time. *Hahn v. Claybrook,* 130 Md. 179, 182, 100 A. 83. In the absence of fraud or concealment limitations would seem to be a complete defense to an action based upon tort liability, as distinct from a claim of continuing nuisance as against an adjoining landowner. Compare *Consolidated Public Utilities v. Baile,* 152 Md. 371, 136 A. 825.

The case against the Meyerhoffs and Goldberg, as directors, is based upon Section 100 of Art. 23 of the Code, which provides in effect that directors become trustees for the benefit of creditors, stockholders and members to the extent of the corporate assets coming into their hands upon dissolution. Dissolution occurred on February 23, 1939, and the rights of creditors became fixed at that time; the forfeiture put an end to the corporate existence. *Atlantic Mill & Lumber Realty Co. v. Keefer*, 179 Md. 496, 20 A. 2d 178; *Fletcher, Corporations*, Secs. 8141, 8220. Even if we assume, without deciding, that the complainant, on the basis of a tort claim, was a creditor of the corporation within the meaning of the statute at the time of dissolution, and that there are assets in the hands of the directors (although this is not alleged), limitations as to such a claim would seem to be a good defense, for the reasons indicated above. It does not appear from the bill that the corporation retained any title to the tract it developed and sold in 1929, or that any title to the property passed to the directors as trustees. Thus, there seems to be no basis to support a claim against them, as successors to the defunct corporation, on the theory that they are adjoining landowners continuing a nuisance.

But aside from the foregoing objections to the relief prayed in the bill, we think there is a want of equity in the complainant's case. The bill is completely silent as to the acquiescence *vel non* of the complainant's predecessor in title, Jones, in the erection of the wall. It cannot be assumed that the erection of the wall, and the paving of the alley which it supported, was wholly without benefit to him, both as a means of access and as an inducement to the sale of the 25-foot lot to the north. There is no indication that he objected to its erection, or to its design or construction. The location and condition of the wall were both apparent to the complainant when he purchased the property in 1939, and his present effort is to compel its reconstruction or repair by parties having at most only nominal title in the bed of an alley, the use

of which had passed to other parties and the complainant's predecessors in title long before he acquired the property. Regardless of technical considerations, the case is not one that would seem to justify the interposition of a court of equity, and we think the second amended bill was properly dismissed.

*Decree affirmed, with costs to the appellees.*